UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
PURNELL ANTHONY, JR.,                           :
                                                :
                Plaintiff,                      :             **MEMORANDUM AND ORDER**
                                                :             13-cv-5730 (DLI)(MDG)
                                                :
          -against-                             :
                                                :
                                                :
LOCAL 295/LOCAL 851 – IBT EMPLOYER              :
GROUP PENSION TRUST FUND BOARD                  :
OF TRUSTEES, et al.,                            :
                                                :
                Defendants.                     :
---------------------------------------------------------- x

**DORA L. IRIZARRY, Chief United States District Judge:**

On October 18, 2013, Plaintiff Purnell Anthony Jr. ("Plaintiff") commenced the instant action against the Local 295/Local 851 IBT Employer Group Pension Trust Fund Board of Trustees ("Board of Trustees"), and Savasta and Company, Inc. ("Savasta," and together with the Board of Trustees, "Defendants"), alleging under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, that Defendants improperly denied him certain pension disability benefits.[1] (*See generally* Complaint ("Compl."), Dkt. Entry No. 1.) On February 25, 2014, Defendants answered the Complaint. (Dkt. Entry No. 11.) Defendants now move for summary judgment dismissing this action pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem."), Dkt. Entry No. 18.) Plaintiff opposes the motion (*see* Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n"), Dkt. Entry No. 22), and cross-moves for summary judgment. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem."), Dkt Entry No. 25.) Defendants oppose the cross-motion. (*See* Defs.' Mem. in Opp'n to Mot. for Summ. J. ("Defs.' Opp'n"), Dkt. Entry No. 30.) Finally,

---
[1] In the Complaint, Local 295 of the International Brotherhood of Teamsters also is named as a defendant. By stipulation of the parties dated February 10, 2014, Local 295 was dismissed from this action. (Dkt. Entry No. 6.)

Defendants move to strike as improper certain materials Plaintiff submits in support of his summary judgment motion. (*See* Defs.' Mot. to Strike, Dkt. Entry No. 34.) Plaintiff opposes. (*See* Dkt. Entry No. 32.) For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion is denied. Defendants' motion to strike is denied as moot.

## BACKGROUND[2]

I. **Plaintiff's Employment and Disability History**

Plaintiff was employed by Airborne Express from January 5, 1987 until approximately 2004. (Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s 56.1") ¶ 5, Dkt. Entry No. 28; Defs.' Local Rule 56.1 Response to Pl.'s Statement of Material Facts ("Defs.' 56.1 Resp.") ¶ 5, Dkt Entry No. 29.) In or around June 2002, Plaintiff suffered an injury to his back in a work related incident. (Pl.'s 56.1 ¶ 9; Defs.' 56.1 Resp. ¶ 9.) According to Plaintiff, he was injured on his shift as a delivery driver when he lifted a package off a conveyor belt and into a van. (Pl.'s 56.1 ¶¶ 8, 10; Defs.' 56.1 Resp. ¶¶ 8, 10.[3]) Following his injury, Plaintiff allegedly suffered from back pain that interfered with his ability to perform his job. (Pl.'s 56.1 ¶ 15; Defs.' 56.1 Resp. ¶ 15.) Plaintiff allegedly made several attempts to return to work on a consistent basis, but, each time, he found himself "out again" within a few days due to his back problems. (*Id.*)

Plaintiff thereafter applied for worker's compensation benefits. (Pl.'s 56.1 ¶ 22; Defs.' 56.1 Resp. ¶ 22.) In a worker's compensation decision issued on September 7, 2005, after Plaintiff's employment with Airborne Express had ended, it was determined that Plaintiff

---

[2] The following facts are undisputed unless otherwise noted.

[3] Defendants object to this factual averment, and many others, in Plaintiff's Local Rule 56.1 Statement of Material Facts on the ground that such averments rely on evidentiary materials that properly should not be considered by the Court in rendering its decision. The Court addresses Defendants' motion to strike those materials in Part III of the Discussion, *infra*. For purposes of the factual background, the Court treats Defendants' objection as a general one, and, therefore, declines to note each individual objection Defendants assert on this same ground.

suffered from a "disability of a moderate nature" related to his 2002 work injury. (Pl.'s 56.1 ¶ 23; Defs.' 56.1 Resp. ¶ 23; *see also* Ex. C to the Decl. of Stewart Lee Karlin ("Karlin Decl."), Dkt. Entry No. 26.) An award of benefits was reserved pending a further hearing. Following that hearing, held on May 2, 2006, a second worker's compensation decision awarded Plaintiff benefits for a total of 14.4 compensable weeks in 2002, and 10.4 weeks in 2006. (*See* Ex. D to the Karlin Decl.)

Plaintiff alleges that, as a result of his 2002 work injury, the condition of his back deteriorated over time. (Pl.'s 56.1 ¶ 34; Defs.' 56.1 Resp. ¶ 34.) Thus, Plaintiff ultimately sought and was awarded Social Security Disability Insurance benefits. (*Id.*) Those benefits were awarded with an effective payment start date of August 2008. (Ex. E to the Karlin Decl.)

## II.    The "Fund" and the "Plan"

During his employment with Airborne Express, Plaintiff, at one time, had been a member of Local 295/Local 851 International Brotherhood of Teamsters Union (the "Union"). (Pl.'s 56.1 ¶ 7; Defs.' 56.1 Resp. ¶ 7.) The Local 295/Local 851 – IBT Employer Group Pension Trust Fund (the "Fund") is a multiemployer Fund that provides pension and disability benefits to employees covered by collective bargaining agreements ("CBA") between the Union and contributing employers. (*See* Defs.' Local Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶ 1, Dkt. Entry No. 20.[4]) The Fund is maintained by the Board of Trustees, consisting of trustees who represent contributing employers and trustees who represent the Union. (Defs.' 56.1 ¶ 2.) The Fund pays pension and disability benefits to eligible participants under the terms of a written

---

[4] In support of their summary judgment motion, Defendants filed a Statement of Material Facts as required by Local Rule 56.1. Under that rule, Plaintiff was required to file a responsive statement of facts. Plaintiff did not do so, instead apparently relying on the statement of facts he submits in support of his own cross-motion for summary judgment. Given Plaintiff's failure, the Court has the discretion to deem the facts in Defendants' Local Rule 56.1 Statement of Material Facts admitted. Nevertheless, the Court declines to do so, subject to the limited exception that the Court relies on those facts for certain information concerning the Fund.

3

pension plan (the "Plan") that is administered by Savasta, as third-party administrator. (Defs.' 56.1 ¶¶ 2-3.)

Pursuant to the terms of the Plan, a Participant, as defined by the Plan, is entitled to the payment of disability benefits if certain conditions are met. Specifically, § 4.4 of the Plan provides:

> A Participant who becomes Totally and Permanently Disabled while employed in Covered Employment, or within two years from the date he ceased being employed in Covered Employment, shall be entitled to a Disability Benefit, provided he makes application thereof in such manner as the Trustees may direct . . .

(Plan § 4.4, Ex. 1 to the Decl. of Linda Kellner ("Kellner Decl."), Dkt. Entry No. 21.[5]) Section 2.43 of the Plan defines "Totally and Permanently Disabled" as follows: "A Participant shall be considered to be 'Totally and Permanently Disabled' only if he or she has received a certification of a disability benefit (SSDI) award from the Social Security Administration." (Plan § 2.43.) Finally, in relevant part, the Plan defines "Covered Employment" as "employment for which the Employer is obligated by its agreement with a Union to contribute to the Fund." (Plan § 2.12.)

### III. The Denial of Plaintiff's Application for Disability Benefits

In February 2012, Plaintiff inquired with Savasta as to the possibility of qualifying for disability benefits under the Plan. (Pl.'s 56.1 ¶ 35; Defs.' 56.1 Resp. ¶ 35.) Savasta responded by letter dated April 6, 2012, that Plaintiff had amassed the minimum number of employee service years to be eligible for such benefits. (*See* Ex. L to the Karlin Decl.) Citing to § 4.4 of the Plan, the letter further stated that, to qualify for disability benefits, Plaintiff would have to "make [an] application and provide evidence in the form of the Social Security Award letter that

---

[5] This language was taken from the Amended and Restated Plan Effective July 1, 2009. That version of § 4.4 reflects an amendment, effective March 29, 2005 that added the following italicized terms: A Participant who becomes Totally and Permanently Disabled *while employed in Covered Employment, or within two years from the date he ceased being employed in Covered Employment*, shall be entitled . . ." (*See* Third Amendment to the Plan, executed June 29, 2005, Ex. H to the Karlin Decl.) The Court considers the language of § 4.4, as amended, for purposes of its decision, as neither party disputes that such amended language reflects the version of § 4.4 properly applicable to Plaintiff.

indicates that you became disabled while in Covered Employment or within . . . two (2) years of the date you ceased Covered Employment." (*Id.*) Finally, the letter stated that Plaintiff was eligible for the payment of unreduced pension benefits beginning in 2026, or reduced pension benefits upon early retirement in 2016. (*Id.*)

Plaintiff thereafter submitted an application seeking disability benefits under the Plan. (Ex. I to the Karlin Decl.) Plaintiff stated in the application that he first became disabled on June 3, 2002, the date of his 2002 work injury. (*Id.*) Plaintiff also stated that he ended his employment in a position covered by a Union collective bargaining agreement on April 30, 2004. (*Id.*) Along with his application, Plaintiff submitted confirmation of his award of Social Security disability benefits. (Ex. E to the Karlin Decl.) Plaintiff additionally submitted an August 7, 2009 medical report from Dr. John Piazza ("Dr. Piazza"). (Ex. 4 to the Kellner Decl.) In the report, Dr. Piazza concluded that Plaintiff suffered from a "permanent partial disability" related to his 2002 work injury, but had a prognosis of "favorable, with residuals." (*Id.*)

By letter dated July 16, 2012, Savasta informed Plaintiff that his application for disability benefits had been denied. (*See* Ex. N to the Karlin Decl.) The letter stated that Plaintiff did not qualify for disability benefits under the Plan because he "did not become disabled while employed in Covered Employment or within two years of the date [he] ceased being employed in Covered Employment." (*Id.*) The letter further informed Plaintiff that he had the right to appeal the denial of benefits to the Board of Trustees. (*Id.*) Plaintiff did so, supplementing his application with additional medical treatment records. (Ex. O to the Karlin Decl.[6]) On or around October 26, 2012, the Board of Trustees denied Plaintiff's appeal. (Ex. P to the Karlin Decl.) A letter from Savasta confirmed the denial, once again stating that Plaintiff did not

---

[6] As attached to the Karlin Declaration, Exhibit O merely is a cover letter, dated July 25, 2012, that Plaintiff purportedly sent to Savasta indicating that certain medical documentation was enclosed. The actual medical records are not attached.

5

become disabled during Covered Employment or within two years of ceasing Covered Employment. (*Id.*) Plaintiff thereafter filed the instant action, alleging that Defendants' denial of his application for disability benefits under the Plan was "arbitrary, illegal, capricious, unreasonable and contrary to [ERISA]." (Compl. ¶ 16.)

## DISCUSSION

### I. Legal Standards of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan administrator has discretionary authority to make eligibility determinations, courts "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Hobson v. Metropolitan Life Ins. Co.*, 574

F.3d 75, 82 (2d Cir. 2009) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)).

Here, the Plan unambiguously grants the Board of Trustees exclusive discretion to make eligibility determinations and to construe the Plan. Indeed, § 8.3 of the Plan expressly provides:

> The Board, and any committee of the Board designated by the Board in accordance with the Trust Agreement, shall have the exclusive right, power, and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan, Trust Agreement and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan or the Trust and the investment of the Plan assets. Such discretionary authority shall include, but not be limited to, the authority to: (a) take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan; (b) formulate, interpret and apply rules, regulations, and policies necessary to administer the Plan in accordance with its terms; (c) decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan; and (d) resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan, Trust Agreement or other Plan documents . . . . In addition, benefits under the Plan will be paid only if the Board decides in its discretion that the applicant is entitled to them.

(Plan § 8.3.) Other courts in this Circuit considering substantially similar language have concluded that such language confers upon a board of trustees the discretionary authority to construe and make eligibility determinations under an ERISA plan. *See, e.g.*, *Ocampo v. Building Serv. 32B-J Pension Fund*, 2014 WL 687227, at *4-5 (S.D.N.Y. Feb. 14, 2014), *aff'd* 787 F.3d 683 (2d Cir. 2015). The same conclusion obtains here and compels the Court to apply an "arbitrary and capricious" standard of review to the Board of Trustees' decision to deny Plaintiff benefits.

Plaintiff nevertheless argues that a less deferential standard of review is warranted because Savasta was laboring under a conflict of interest. According to Plaintiff, Savasta not only made eligibility determinations in connection with the Plan, but also was responsible for paying any benefits due under the Plan. (*See* Pl.'s Opp'n at 18.) Therefore, Savasta allegedly

8

had an incentive to deny Plaintiff's application for benefits, and was in a position to act on that incentive. In *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 112 (2008), the Supreme Court recognized that a conflict of interest exists where a plan administrator both evaluates claims for benefits under a plan and pays such benefits claims. However, Plaintiff misreads the operative holding of *Glenn*, which actually "rejected the notion that the conflict of interest justifies changing the standard of review from deferential to *de novo*." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citing *Glenn*, 554 U.S. at 115-16.) Thus, pursuant to *Glenn*, "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *Id.* at 133 (citing *Glenn*, 554 U.S. 115-116.)

Here, there is no evidence in the record to support Plaintiff's contention that Savasta was responsible for paying benefits due under the Plan. Furthermore, while Savasta made the initial determination denying Plaintiff's application for disability benefits, the record firmly establishes that it was the Board of Trustees that subsequently considered and denied Plaintiff's appeal. Accordingly, Plaintiff fails to raise a genuine issue of material fact with respect to his allegation that Defendants were affected by a conflict of interest. In any event, even if a conflict of interest existed, it would not warrant a *de novo* standard of review in light of the Plan's grant of discretionary authority to the Board of Trustees to construe the Plan and make eligibility determinations. Accordingly, the Court concludes that it may not overturn the Board of Trustees' decision unless it was arbitrary and capricious.

**II.     Application**

Under the arbitrary and capricious standard of review, the Court is "not free to substitute

[its] own judgment" for that of Board of Trustees, "as if [the Court] were considering the issue of eligibility anew." *Pagan*, 52 F.3d at 442. Rather, the appropriate scope of review is a narrow one under which the Court may overturn the Board of Trustees' decision to deny benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal quotation marks omitted). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [Board of Trustees and] requires . . . more than a scintilla but less than a preponderance." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks and citation omitted).

Notably, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley*, 551 F.3d at 132 (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000)). However, "where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.* at 133 (quoting *Pulvers*, 210 F.3d at 93.) "Further, where, by their interpretation, the trustees of a plan render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013) (internal quotation marks and citation omitted).

Here, under § 4.4 of the Plan, Plaintiff had to become Totally and Permanently Disabled during Covered Employment, or within two years of ceasing Covered Employment, to qualify for disability benefits. (Plan § 4.4.) The parties agree that such language, as applied here, required Plaintiff to establish that he was Totally and Permanently Disabled by no later than

2006, two years after his employment at Airborne Express ended. However, the parties disagree as to whether the Board of Trustees, in determining that Plaintiff did not satisfy that requirement, reached a decision that was arbitrary and capricious. To resolve that disagreement, the Court looks to the express language of the Plan.

### A. The Requirements of the Plan

As defined in § 2.43 of the Plan, a Participant in the Plan is deemed Totally and Permanently Disabled "*only* if he or she has received a certification of a disability benefit (SSDI) award from the Social Security Administration." (Plan § 2.43, emphasis added.) It is undisputed that Plaintiff furnished proof to the Board of Trustees that he was awarded Social Security disability benefits with an effective payment start date of August 2008, more than four years after he left Covered Employment at Airborne Express. (*See* Ex. E to the Karlin Decl.)

Defendants interpret the Plan to require that Social Security disability benefits be awarded *effective* as of the date when the Participant was working in Covered Employment or within two years of having ceased employment. Defendants contend that the denial of Plaintiff's benefits was a proper exercise of discretion under the Plan because Plaintiff's award of Social Security disability benefits was not effective as of 2006 or earlier. (*See* Defs.' Mem. at 8-10.) As such, Plaintiff did not become Totally and Permanently Disabled within the meaning of the Plan during his employment at Airborne Express, or within two years of ceasing such employment. *Id.* Plaintiff counters that § 2.43 and § 4.4 are ambiguous as to whether an applicant must show that his award of Social Security disability benefits was effective as of any particular time. (*See* Pl.'s Reply Mem. in Supp. of Mot. for Summ. J., at 3-4, Dkt. Entry No. 31.) Plaintiff asserts he satisfied the requirements of the Plan by furnishing proof of an award of Social Security disability benefits effective as of 2008; furthermore, Defendants should have

11

found him eligible for disability benefits under the Plan because other evidence he submitted with his application, such as the medical report of Dr. Piazza, indicated that his disability stemmed from his 2002 work accident. (*See Id.* at 2-8; *see also* Ex. 4 to the Kellner Decl.)

The record in this case and the plain language of Sections 2.43 and 4.4 support Defendants' interpretation. A reasonable interpretation of § 2.43 is that an applicant does not become Totally and Permanently disabled within the meaning of the Plan *unless and until* he or she receives an award of Social Security disability benefits. (*See* Plan § 2.43.) A review of relevant cases in this Circuit shows that similar pension plan language has defined "totally and permanently disabled" as requiring that: "[T]he Participant presents to the Trustees a certification of a permanent disability benefit award from the [SSA] *showing that the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment*." *Ocampo*, 2014 WL 687227, at *2 (emphasis added). Therefore, Defendants did not reach an unreasonable or arbitrary and capricious decision in denying Plaintiff benefits under § 4.4 because he did not become Totally and Permanently Disabled, if at all, until 2008, when the Social Security Administration certified that he had a permanent disability and awarded him disability insurance payments starting in August 2008.

Under the facts and circumstances of this case, the Court concludes that the Board of Trustees' interpretation of § 2.43 and § 4.4 was reasonable and consistent with the plain language of the Plan, and Plaintiff's interpretation, which is neither consistent nor is it reasonable, cannot control the outcome. *See McCauley*, 551 F.3d at 132 ("Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.") (quoting *Pulvers*, 210

F.3d at 92-93). That conclusion is further reinforced by the Plan's broad grant of discretion to the Board of Trustees to construe the Plan's provisions. Such discretion includes "the exclusive right, power, and authority, in its sole and absolute discretion, to . . . resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan. (Plan § 8.3.) Accordingly, there is no basis to find that the Board of Trustees' interpretation or application of the Plan's provisions was arbitrary and capricious.

### B. Other Medical Evidence

Plaintiff argues that the mere fact that the Social Security Administration awarded him disability insurance payments starting in August 2008 does not foreclose the possibility that he was disabled prior to that date. Plaintiff further maintains that other evidence he submitted to Defendants suggested his disability arose before 2006, *i.e.* within two years of leaving Covered Employment at Airborne Express. However, Plaintiff's argument disregards the express language of the Plan, which specifies what evidence must be furnished to establish that an applicant is Totally and Permanently Disabled within the specified time frame. The evidence Plaintiff submitted did not support a "disability" finding as that term is defined in the Plan. Even assuming that the Board of Trustees considered such other evidence, its finding that Plaintiff did not become Totally and Permanently Disabled within two years of leaving Covered Employment was not arbitrary and capricious. For example, Dr. Piazza's August 7, 2009 medical report, which Plaintiff submitted to Defendants in connection with his application for disability benefits, concluded: "It is my opinion . . . that the above noted injuries . . . caused a permanent *partial* disability (primarily relative to the lumbar disc herniation and disc bulge)." (Ex. 4 to the Kellner Decl.) (emphasis added). Dr. Piazza further concluded that Plaintiff's prognosis was favorable. (*Id.*)

Plaintiff contends that the 2005 and 2006 decisions relating to his worker's compensation claim further support his right to disability benefits.[7] However, in the September 7, 2005 worker's compensation decision, the administrative judge found that Plaintiff suffered from a "disability of a moderate nature." (Ex. C to the Karlin Decl.) Similarly, while Plaintiff ultimately was awarded worker's compensation benefits following a May 2, 2006 hearing, such benefits were awarded only for limited stretches of time in 2002 and 2006. (Ex. D to the Karlin Decl.) Thus, there is nothing in the 2005 or 2006 worker's compensation decisions to substantiate that Plaintiff, at any time in 2006 or before, suffered from a disability of sufficient severity and permanence to qualify for disability benefits under the Plan. *See Celardo*, 318 F.3d at 146 (a trustee's denial of benefits under a plan is not arbitrary and capricious where it "was based on a rational interpretation of the Plan's provisions and was supported by substantial evidence.")

Absent any evidence to support a contrary conclusion, the Court must assume that an applicant can establish that he or she is Totally and Permanently Disabled only as explicitly defined in the Plan. Under the reasonable interpretation employed by the Board of Trustees, the Plan required Plaintiff to show that he was awarded Social Security disability benefits effective as of a date when he was in Covered Employment, or within two years of leaving Covered Employment, *i.e.*, no later than 2006. (*See* Plan §§ 2.43 and 4.4.) The record is clear that Plaintiff failed to make that requisite showing. Accordingly, the Court finds that the Board of Trustees did not act arbitrarily and capriciously in denying Plaintiff disability benefits.

---

[7] Defendants dispute that Plaintiff submitted any records relating to his worker's compensation claim when applying for disability benefits under the Plan. Therefore, to the extent Plaintiff relies on those records in this proceeding, Defendants argue that such materials should be stricken from the record. The Court addresses Defendants' motion to strike in Section III of the Discussion, *infra*.

**III.  Motion to Strike**

It is well settled that "[a] district court's review of a denial of an ERISA claim under the arbitrary and capricious standard is limited to the administrative record." *Brown v. Bd. of Trustees of Bldg. Serv. 32B-J Pension Fund*, 392 F. Supp.2d 434, 446 (E.D.N.Y. 2005) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995)); *see also Rund v. JPMorgan Chase Grp. Long Term Disability Plan*, 2012 WL 1108003, at *1 (S.D.N.Y. Mar. 30, 2012). Here, Defendants contend that certain materials Plaintiff submitted to the Court and relied upon to support his summary judgment motion were not presented to the Board of Trustees at the time it made the decision to deny Plaintiff's disability benefits appeal. (*See generally* Mot. to Strike.) While the parties dispute whether the 2005 and 2006 decisions relating to Plaintiff's worker's compensation claim were submitted to the Board of Trustees, the record is clear that certain medical documentation attached to Plaintiff's summary judgment motion was not so submitted. (*See, e.g.*, Ex. G to the Karlin Decl.) The Court agrees that it may not properly consider materials that were not part of the administrative record before the Board of Trustees when it made its decision to deny Plaintiff's appeal.  Nevertheless, because the extraneous materials submitted by Plaintiff do not alter or otherwise impact the Court's conclusion that the Board of Trustees' decision was not arbitrary and capricious, the Court denies Defendants' motion to strike as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's cross-motion for summary judgment is denied. Defendants' motion to strike is denied as moot. This action is dismissed in its entirety, with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
September 22, 2016

_____/s/_____
DORA L. IRIZARRY
Chief Judge